## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

U.S. BANK TRUST, N.A., as trustee for LSF11
MASTER PARTICIPATION TRUST

    **Plaintiff**

v.

KAREN LISA VINCENT

    **Defendant,**

    and

THE BANK OF NEW YORK MELLON

    **Party-In-Interest**

---

KAREN LISA VINCENT

    **Counterclaim Plaintiff and Defendant**

v.

 U.S. BANK TRUST, N.A.,

    **Counterclaim Defendant and Plaintiff**

    and

CALIBER HOME LOANS, INC.

JOHN A. DOONAN, and

RENAEAU J LONGORIA

    **Counterclaim Defendants**

Case No. 2:20-cv-00380-JAW

## FIRST AMENDED COUNTERCLAIM
### and
### DEMAND FOR JURY TRIAL

### JURISDICTION

1.    The jurisdiction of this Court is conferred by 28 U.S.C. §1331 and §1367. Venue is proper as all relevant events occurred in this district and Defendants were doing business in Maine during all relevant times.

### PARTIES

**A.  Counterclaim Plaintiff Karen Lisa Vincent.**

2.    Counterclaim Plaintiff Karen Lisa Vincent (hereafter "Vincent") is a natural person and resident of the State of Maine. She is a "consumer" as defined by 32 M.R.S.A. §11002(3), and 15 USC 1692a(3).

3.    Vincent is a person whose debts were discharged pursuant to 11 U.S.C. § 727 on July 31, 2012 by order of the United States Bankruptcy Court for the District of Maine in Case No. 12-20447

**B.  Counterclaim Defendant U.S. Bank Trust, N.A.**

4.    Counterclaim Defendant U.S. Bank Trust, N.A. (hereafter "Bank") is a national bank organized under the laws of the United States of America whose business includes acting as trustee for large numbers of pools of securitized loans such as the loan at issue in this case.

5.    Bank alleges in its Complaint in this action that it is the owner of the loan that is the subject of its Complaint and is the holder of and the party with the right to enforce the note that evidences said loan.

### C.  Counterclaim Defendant Caliber Home Loans Inc.

6.      Counterclaim Defendant Caliber Home Loans, Inc. (hereafter "Caliber") is a corporation organized and existing under the laws of the State of Delaware and is registered to do business in the State of Maine.

7.      Caliber services home mortgage loans owned by the related entities that collectively constitute and/or are affiliated with the private equity firm known as Loan Star Funds.

8.      Caliber services hundreds and perhaps thousands of residential mortgages on Maine homes, and services many thousands of residential mortgages in states across the country.

9.      At all times material to the allegations of this Counterclaim, Caliber has been a debt collector on behalf of and mortgage servicer for Bank in its capacity as trustee of the LSF 11 Master Participation Trust including with respect to the loan that is the subject of this action.

### D.  Counterclaim Defendants John A. Doonan and Reneau J. Longoria.

10.     Counterclaim Defendant John A. Doonan (hereafter, "Doonan") is  a Maine licensed attorney who is a partner in the law firm of Doonan, Graves and Longoria, LLC.

11.     Counterclaim Defendant Reneau J. Longoria (hereafter "Longoria") is a Maine licensed attorney who is a partner in the law firm of Doonan, Graves and Longoria, LLC.

12.     Doonan and Longoria are the lawyers almost if not entirely exclusively hired by Caliber to foreclose mortgages in the State of Maine that are held by U.S. Bank National Association and U.S. Bank Trust, N.A as trustees for the loans owned by the related entities that collectively constitute and/or are affiliated with the private equity firm known as Loan Star Funds.

13.     At all times material to the allegations of this Counterclaim, Doonan and Longoria have acted debt collectors for and as agents and attorneys for Bank and for Caliber with respect to the loan that is the subject of this action.

## ALLEGATIONS OF FACTS SUPPORTING COUNTERCLAIM
## APPLICABLE TO ALL COUNTS

14.     On July 26, 2006 Vincent executed and delivered to First Magnus Financial Corporation (hereafter "First Magnus") a note with respect to a loan from First Magnus in the amount of $197,000.00, a copy of which is Exhibit B (ECF 1-2) to Bank's Complaint, (hereafter "the Note")

15.     On July 26, 2006 Vincent executed and delivered to First Magnus a mortgage (hereafter "the Mortgage") to secure the Note, a copy of which is Exhibit C to Bank's Complaint.

16.     Soon after the loan evidenced by the Note and Mortgage (hereafter "the Vincent Loan") was made to Vincent, First Magnus sold the Note to Federal National Mortgage Association (hereafter "Fannie Mae").

17.     At the time of the sale of the Note to Fannie Mae or soon thereafter, Bank of America, N.A. doing business as Bank of America Mortgage (hereafter "BANA"), became the mortgage servicer for the Vincent Loan

18.     During its time of servicing the Vincent Loan, BANA. was acting as agent for Fannie Mae.

19.     At no time did First Magnus execute or deliver a written assignment of the Mortgage to Fannie Mae.

20.     At no time until the commencement of this action did Vincent have knowledge that Fannie Mae had previously owned any interest in Vincent Loan.

21.     Vincent filed a Chapter 7 bankruptcy case on April 19, 2012 in the Bankruptcy Court for the District of Maine.

22.     On July 31, 2012, the Bankruptcy Court entered an order discharging Vincent from her debts, a copy of which is attached to the original Counterclaim as **Exhibit 1** (ECF 6-1) (the "Discharge Order").

23.     At no time has there ever existed between Vincent and any entity owning an interest in the Vincent Loan any reaffirmation agreement meeting the requirements of 11 U.S.C. § 524(c).

24.     There does not exist in the 2012 bankruptcy case of Vincent any order of the bankruptcy court approving any reaffirmation by Vincent of any debt or liability associated with the Vincent Loan.

25.     All in personam liability of Vincent associated with the Vincent Loan was discharged in Vincent's Chapter 7 bankruptcy case by the Discharge Order.

26.     At the time of Vincent's Chapter 7 bankruptcy Case, BANA was the servicer of the Vincent Loan and was the agent for the owner of the Note, Fannie Mae.

27.     At the time of the entry of the Discharge Order, the Maine Bankruptcy Court mailed copies of the Discharge Order to the notice recipients listed on the bankruptcy courts "Notice Recipients" list, a copy of which is attached hereto as   **Exhibit 2** (ECF 6-2).

28.     BANA, acting as servicer and as agent for Fannie Mae, received a copy of the Discharge Order from the Bankruptcy Noticing Center in August 2012.

29.     The Mortgage is on the "Fannie Mae/Freddie Mac Uniform Instrument with MERS" Form 3020 which is the same mortgage form construed by the Maine Law Court in the

cases of *Mortgage Electronic Registration Systems, Inc. v. Saunders*, 2010 ME 79, 2 A.3d 289 and *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700.

30.     The Mortgage granted to Mortgage Electronic Registration Systems, Inc. only the right to record the Mortgage and granted to First Magnus all of the remaining mortgagee interest under the Mortgage.

31.     First Magnus has not assigned away to any third party its ownership of the Mortgage at any time.

32.     Following the entry of the Discharge Order, Vincent and her husband continued to live in the home secured by the Mortgage and Vincent continued into early 2016 to make monthly mortgage payments on the Vincent Loan to BANA.

## CAUSES OF ACTION

### Count I:  Violation of the Bankruptcy Discharge Injunction, 11 U.S.C. § 524
### (Claim for Actual Damages and Attorney Fees Against Bank)

33.     Vincent repeats the allegations of Paragraphs 1-32  of the Counterclaim as if set forth fully in this Paragraph 33 of Count I.

34.     Prior to the filing of the Complaint, and at the time that Bank, in its trustee capacity, became the owner of the Vincent Note, and at the time that Caliber became mortgage servicer of the Vincent Loan, Bank and Caliber received  and had actual knowledge that Vincent's debts, including the debt arising out of the Vincent Loan, had been discharged by the Discharge Order.

35.     Vincent has continuously believed and understood since the entry of the Discharge Order in her 2012 bankruptcy case that she had no longer had  personal liability on the Note evidencing the Vincent Loan.

36.     Vincent's Chapter 7 bankruptcy filing in 2012 was the result of increasing and unaffordable medical bills for physicians and hospital bills necessitated by the care of Vincent's husband who had been given a diagnosis in 2012 of nonalcoholic steatohepatitis which resulted in cirrhosis of the liver.

37.     As the illness of Vincent's husband progressed, he reached the point where, by 2016 he had multiple physical ailments and was in need of a liver transplant in order to survive and he could no longer drive a car or work, and the related medical expenses and loss of his income forced Vincent to stop making payments on the Vincent Loan in 2016.

38.     Once she stopped making payments on the Vincent Loan in 2016, Vincent knew that it was no longer possible for her to keep the family home in Standish, Maine that is the subject of the Mortgage, so she and her husband moved out of the home and into rental quarters and notified the servicer at that time, BANA, that they had vacated the home.

39.     In September 2020, several weeks before the Summons and Complaint in this action were served upon her, Vincent's husband was diagnosed as having colon cancer and Vincent and her husband were told that Vincent's husband needed surgery to remove a portion of his colon and to determine whether his cancer had spread to any other parts of his body.

40.     Vincent was shocked and dismayed and suffered severe emotional distress when, in the midst of caring for her husband and assisting him in obtaining necessary medical treatments, in October 2020 she received the Complaint in this action in which Bank alleged in Counts II-V that it was entitled to an in personam judgment against her for over $244,889.73.

41.     The conduct of Bank described above  in commencing this action seeking recovery from Vincent under Counts II-V of the Complaint of debts arising out of the Note as a

personal liability of Vincent violated the Bankruptcy Discharge Injunction, 11 U.S.C. § 524,

enforced pursuant to 11 U.S.C. § 105.

WHEREFORE, Vincent seeks awards against Bank of actual damages and compensatory

damages including costs and attorney fees pursuant to 11 U.S.C. §§ 524 and 105, and for such

other and further relief as this Court deems just and proper.

### Count II:  Violation of the Bankruptcy Discharge Injunction, 11 U.S.C. § 524
### (Claim for Actual Damages and Attorney Fees Against Doonan and Longoria)

42.     Vincent repeats the allegations of Paragraphs 1-32  and Paragraphs 34-41 of

Count I of the Counterclaim as if set forth fully in this Paragraph 42 of Count II of the

Counterclaim.

43.     In the three years since November 13, 2017, Doonan and Longoria have filed over

200 residential mortgage foreclosure cases in this court.

44.     In the past twelve years, Doonan and Longoria have filed many hundreds more,

and possibly thousands more, foreclosure cases in the Maine state court system.

45.     In Paragraph 31 of the Complaint of Bank, Doonan and Longoria specifically

alleged that Vincent had filed a Ch. 7 bankruptcy case in 2012.

46.     Before filing the Complaint and at all times material to this Counterclaim,

Doonan and Longoria knew that Vincent's debts had been discharged by the Discharge Order.

47.     At all times material to this Counterclaim, Doonan and Longoria knew that the

Discharge Order and 11 U.S.C. § 524 barred them from taking any action against Vincent

personally seeking to recover money or damages relating to the Vincent Loan.

48.     Doonan and Longoria drafted, signed and filed the Complaint against Vincent

alleging in Counts II-V that Vincent was personally liable to Bank for over $244,889.73 for

debts  and damages that were discharged by the Discharge Order in Vincent's 2012 bankruptcy case.

49.     At the time of the filing of the Complaint in this action on October 15, 2020, Doonan and Longoria, acting as agents for  Bank and Caliber, knew that the assertions of the allegations of Counts II through V of the Complaint seeking to recover debts related to or arising out of the Note as personal liabilities of Vincent constituted violations of the discharge Order and of 11 U.S.C. §524(a)(2).

50.     The conduct of  Doonan and Longoria described above  in commencing this action seeking recovery from Vincent under Counts II-V of the Complaint of debts arising out of the Vincent Loan as a personal liability of Vincent violated the bankruptcy discharge injunction, 11 U.S.C. § 524, enforced pursuant to 11 U.S.C. § 105 and the Discharge Order.

WHEREFORE, Vincent seeks awards against Doonan and Longoria of actual damages and compensatory damages including costs and attorney fees, pursuant to 11 U.S.C. §§ 524 and 105, and for such other and further relief as this Court deems just and proper.

### Count III:  Violation of the Bankruptcy Discharge Injunction, 11 U.S.C. § 524 (Claim for Punitive Damages and Attorney Fees Against Doonan and Longoria)

51.     Vincent repeats the allegations of Paragraphs 1-32, Paragraphs 34-41 of Count I, and Paragraphs 43-50 of Count II of the Counterclaim as if set forth fully in this Paragraph 51 of Count III of the Counterclaim.

52.     In filing the Complaint, Doonan and Longoria knew that the allegation stated in paragraph 32 that Vincent had reaffirmed the debt on the Vincent Loan was false.

53.     In filing the Complaint, Doonan and Longoria knew that their client, the Bank, had no standing to assert the claim for foreclosure alleged in Count I of the Complaint.

54.     In filing the Complaint, Doonan and Longoria knew that the allegation of paragraph 32 of the Complaint that Vincent was judicially estopped from challenging Bank's lack of standing was false.

55.     Doonan and Longoria included the false allegation of paragraph 32 of the Complaint that Vincent had reaffirmed the debt of the Vincent Loan, and the allegations of Counts II-V in the Complaint asserting personal liability against Vincent for the sum of $244,889.73, which liability had been discharged, for the purpose of exerting additional pressure on Vincent to not oppose the foreclosure claim set out in Count I of the Complaint even though they  knew that Bank had no standing to assert that claim.

56.     At the time of the filing of the Complaint, Doonan and Longoria were intimately familiar with the prohibitions of 11 U.S.C. §§ 524(a) and 727(b) which bar actions by creditors to collect debts which have been discharged in bankruptcy.

57.     Doonan and Longoria have extensive experience across hundreds of cases in dealing with foreclosure cases involving mortgagors, such as the Vincent case, whose debts have been discharged in bankruptcy.

58.      The willful actions of Doonan and Longoria to violate the Discharge Order and the provisions of 11 U.S.C. § 524(a) with their filing of the Complaint must be considered to be acts of arrogant defiance of the Bankruptcy Code sufficiently egregious to warrant the imposition of punitive damages.

WHEREFORE, Vincent seeks an award of punitive damages, payable to her or to the foreclosure diversion program operated by the Maine Bureau of Consumer Credit Protection for use in accordance with the provisions of 14 M.R.S. § 6112(4), against Doonan and Longoria

pursuant to 11 U.S.C. §§ 524 and 105, and for such other and further relief as this Court deems just and proper.

### Count IV:  Violation of the Bankruptcy Discharge Injunction, 11 U.S.C. § 524
### (Claim for Actual Damages and Attorney Fees Against Caliber)

59.     Vincent repeats the allegations of Paragraphs 1-32, Paragraphs 34-41 of Count I, Paragraphs 43-50 of Count II, and Paragraphs 52-57 of Count III of the Counterclaim as if set forth fully in this Paragraph 59 of Count IV of the Counterclaim.

60.     Caliber services many thousands of mortgage loans across the  country for Bank and its affiliated institution, U.S. Bank National Association acting in its capacity as trustee of various securitized trusts.

61.     Caliber hires and supervises large numbers of lawyers and law firms across the country to prosecute foreclosure actions for Bank and for its affiliated institution, U.S. Bank National Association.

62.     At all times material to this Counterclaim, Caliber has been familiar with the provisions of 11 U.S.C. § 524(a) and 727(b) which bar legal in personam actions for money damages against homeowners for debts of those homeowners which have been discharged in bankruptcy cases.

63.     Caliber, acting as mortgage servicer for and agent of Bank, hired Doonan and Longoria to act as attorneys for Bank in connection with the Vincent Loan and instructed, authorized and approved the filing by Doonan and Longoria of Complaint on behalf of Bank including Counts II-V asserting that Vincent was personally liable to Bank for over $244,889.73 on debts that were discharged in Vincent's 2012 bankruptcy case.

64.     Caliber is liable and responsible for the conduct of Doonan and Longoria in the filing of the Complaint in violation of the Discharge Order and the provisions of 11 U.S.C. §§ 504(a) and 727(b).

65.     The conduct of  Caliber in instructing, authorizing and approving the filing of the Complaint seeking recovery from Vincent under Counts II-V of the Complaint of debts arising out of the Note as a personal liability of Vincent violated the Bankruptcy Discharge Injunction, 11 U.S.C. § 524, enforced pursuant to 11 U.S.C. § 105.

WHEREFORE, Vincent seeks awards against Caliber of actual damages, compensatory damages including costs and attorney fees, and punitive damages and pursuant to 11 U.S.C. §§ 524 and 105, and for such other and further relief as this Court deems just and proper.

### Count V:  Violation of the Bankruptcy Discharge Injunction, 11 U.S.C. § 524
### (Claim for Punitive Damages and Attorney Fees Against Caliber)

66.     Vincent repeats the allegations of Paragraphs 1-32, Paragraphs 34-41 of Count I, Paragraphs 43-50 of Count II,  Paragraphs 52-57 of Count III, and paragraphs 60-65 of Count IV of the Counterclaim as if set forth fully in this Paragraph 66 of Count V of the Counterclaim.

67.     At the time of the filing of the Complaint by Caliber on behalf of Bank, Caliber was intimately familiar with the prohibitions of 11 U.S.C. § 524(a) which bar actions by creditors to collect debts which have been discharged in bankruptcy.

68.     Caliber has extensive experience across hundreds, and probably thousands, of foreclosure cases involving mortgagors, such as the Vincent case, whose debts have been discharged in bankruptcy.

69.     The willful actions of Caliber to violate the Discharge Order and the provisions of 11 U.S.C. § 524(a) with its filing of the Complaint on behalf of Bank must be considered to be

acts of arrogant defiance of the Bankruptcy Code sufficiently egregious to warrant the imposition of punitive damages.

WHEREFORE, Vincent seeks an award of punitive damages, payable to her or to the foreclosure diversion program operated by the Maine Bureau of Consumer Credit Protection for use in accordance with the provisions of 14 M.R.S. § 6112(4), against Caliber pursuant to 11 U.S.C. §§ 524 and 105, and for such other and further relief as this Court deems just and proper.

### Count VI:  Violation of Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(8) (Claim for Actual and Statutory Damages Against Doonan and Longoria)

70.     Vincent repeats the allegations of Paragraphs 1-32  as if set forth fully in this Paragraph 70 of Count VI of the Counterclaim.

71.     The debts alleged to exist in Counts II-V of the Complaint are consumer debts pursuant to 15 U.S.C. § 1692(a).

72.     Doonan and Longoria are debt collectors within the meaning of 15 U.S.C. § 1692a(6) because they:

a.   Regularly uses instrumentalities of interstate commerce or the mails in its business the principal purpose of which is the collection of debts of consumers; and

b.   Regularly collects or attempts to collect, directly or indirectly , debts owed or due or asserted to be owed or due to others.

73.     The collection of debts is a principal purpose of the businesses of Doonan and Longoria.

74.     In letter communications from Doonan and Longoria with homeowners, including Vincent, when Doonan and Longoria are acting as attorneys for mortgage loan owners, their letters include the following statements:

    a. "We are a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose."

    b. "If you are in bankruptcy or have been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an attempt to collect, assess, or recover all or any portion of the debt from you personally.

75. Doonan and Longoria became debt collectors with respect to the loan at issue in this case after the time that Bank alleges that the loan went into default in paragraph 29 of the Bank's Complaint.

76. Doonan and Longoria, in filing the Complaint, were acting at the direction of and agents for Caliber which was acting in its capacity as servicer for and agent of Bank.

77. The actions of Doonan and Longoria in commencing this action were taken under the authority and control of Caliber and Bank.

78. In filling the complaint in this action, Doonan and Longoria were acting as agents for Bank and Caliber.

79. Doonan and Longoria violated the FDCPA in at least the following respects:

    a. By falsely stating in Paragraph 32 of the Complaint that Vincent had reaffirmed her liability on the Vincent Loan while knowing that she had not done so, in violation of 15 U.S.C. §§ 1692e(2) & (10) and 1692f(1).

    b. By falsely stating in Count II of the Complaint that Vincent is personally liable to Bank for over on the Note for over $244,889.73 when any such liability had been discharged by the Discharge Order, in violation of 15 U.S.C. §§ 1692e(2) & (10) and 1692f(1).

    c.   By falsely stating in Count III of the Complaint that Vincent is personally liable to Bank for breach of contract for money had and received for over $244,889.73 when any such liability had been discharged by the Discharge Order, in violation of 15 U.S.C. §§ 1692e(2) & (10) and 1692f(1).

    d.   By falsely stating in Count IV of the Complaint that Vincent is personally liable to Bank for quantum meriut damages for over $244,889.73 when any such liability had been discharged by the Discharge Order, in violation of 15 U.S.C. §§ 1692e(2) & (10) and 1692f(1).

    e.   By falsely stating in Count V of the Complaint that Vincent is personally liable to Bank for unjust enrichment damages for over $244,889.73, when any such liability had been discharged by the Discharge Order, in violation of 15 U.S.C. §§ 1692e(2) & (10) and 1692f(1).

WHEREFORE, Vincent seeks awards against Doonan and Longoria of actual damages, statutory damages and for an award of costs and attorney fees and pre-judgment and post judgment interest at statutory rates, and for such other and further relief as this Court deems just and proper.

### Count VII:  Violation of Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(8) (Claim for Actual and Statutory Damages Against Caliber)

80.     Vincent repeats the allegations of Paragraphs 1-32,  as if set forth fully in this Paragraph 80 of Count VII of the Counterclaim.

81.     The debts alleged to exist in Counts II-V of the Complaint are consumer debts pursuant to 15 U.S.C. § 1692(a).

82.     Caliber is licensed by the Maine Bureau of Consumer Credit Protection as debt collector permitted to collect debts owed by Maine debtors to creditors.

83.     Caliber is a debt collector within the meaning of 15 U.S.C. § 1692a(6) because it:

a.   Regularly uses instrumentalities of interstate commerce or the mails in its business

the principal purpose of which is the collection of debts of consumers; and

b.   Regularly collects or attempts to collect, directly or indirectly , debts owed or due or

asserted to be owed or due to others.

84.     The collection of debts is a principal purpose of the businesses of Caliber.

85.     Caliber became a dept collector with respect to the loan at issue in this case after

the time that Bank alleges that the loan went into default in paragraph 29 of the Bank's

Complaint.

86.     Caliber, acting though its agents Doonan and Longoria, in filing the Complaint

was acting in its capacity as servicer for and agent of Bank.

87.     Caliber, acting through its agents Doonan and Longoria, in commencing this

action was acting as a debt collector for and agent of Bank.

88.     Caliber, in hiring Doonan and Longoria to file the Complaint and supervising

their work to seek to recover money for the benefit of Bank, and in causing them to act as agents

for Bank in filing the Complaint violated the federal Fair Debt Collection Practices Act.

89.     Caliber, acting through Doonan and Longoria as its agents, violated the FDCPA

in at least the following respects:

a.   By falsely stating in Paragraph 32 of the Complaint that Vincent had reaffirmed

her liability on the Vincent Loan while knowing that she had not done so, in

violation of 15 U.S.C. §§ 1692e(2) & (10) and 1692f(1).

b.   By falsely stating in Count II of the Complaint that Vincent is personally liable to

Bank for over on the Note for over $244,889.73 when any such liability had been

discharged by the Discharge Order, in violation of 15 U.S.C. §§ 1692e(2) & (10) and 1692f(1).

c.  By falsely stating in Count III of the Complaint that Vincent is personally liable to Bank for breach of contract for money had and received for over $244,889.73 when any such liability had been discharged by the Discharge Order, in violation of 15 U.S.C. §§ 1692e(2) & (10) and 1692f(1).

d.  By falsely stating in Count IV of the Complaint that Vincent is personally liable to Bank for quantum meriut damages for over $244,889.73 when any such liability had been discharged by the Discharge Order, in violation of 15 U.S.C. §§ 1692e(2) & (10) and 1692f(1).

e.  By falsely stating in Count V of the Complaint that Vincent is personally liable to Bank for unjust enrichment damages for over $244,889.73, when any such liability had been discharged by the Discharge Order, in violation of 15 U.S.C. §§ 1692e(2) & (10) and 1692f(1).

WHEREFORE, Vincent seeks awards against Caliber of actual damages, statutory damages and for an award of costs and attorney fees and pre-judgment and post judgment interest at statutory rates, and for such other and further relief as this Court deems just and proper.

### Count VIII:  Violation of 14 M.R.S. § 6113
### (Claim for Actual Damages Against Caliber)

90.     Vincent repeats the allegations of Paragraphs 1-32, Paragraphs 60-65 of  Count IV, Paragraphs 67-69 of Count V, and Paragraphs 581-89 of Count VII  of the Counterclaim as if set forth fully in this Paragraph 90 of Count IX of the Counterclaim.

91.     Caliber is mortgage servicer licensed by the Maine Bureau of Consumer Credit Protection to operate as a mortgage servicer in the State of Maine.

92.     Caliber is a mortgage servicer within the meaning of 14 M.R.S. § 6113(1)(B) because it:

a.   Regularly receives scheduled periodic payments from obligors on Maine mortgage loans;

b.   Makes or advances payments to owners of Maine mortgage loans with respect to funds received from obligors on such loans; and

c.   Evaluates Maine mortgage obligors for loss mitigation and loan modification options.

93.     At all times material to this Counterclaim, Caliber has been the mortgage servicer for the Vincent Loan, acting on behalf of and as agent for Bank.

94.     Doonan was counsel for Bank of America, N.A. at the trial court level in *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700 and is explicitly aware of its holding that MERS mortgage assignments of interests granted to MERS on the mortgage form used for the Vincent Loan do not assign the actual mortgage interest to the purported assignee but only assign to the purported assigned the right to record that mortgage.

95.     The allegation of Paragraph 10 of the Complaint that the Mortgage was assigned to Bank of America, N.A. is false and Doonan and Longoria, and therefore also Caliber and Bank, knew that that allegation was false at the time that it was made in the Complaint signed by Doonan and Longoria.

96.     The allegation of Paragraph 11of the Complaint that the Mortgage was assigned to Federal National Mortgage Association is false and Doonan and Longoria, and therefore also

Caliber and Bank, knew that that allegation was false at the time that it was made in the Complaint signed by Doonan and Longoria.

97.     The allegation of Paragraph 12 of the Complaint that the Mortgage was assigned to U.S. Bank Trust, N.A. is false and Doonan and Longoria, and therefore also Caliber and Bank, knew that that allegation was false at the time that it was made in the Complaint signed by Doonan and Longoria.

98.     Through the knowledge of its agents, Doonan and Longoria regarding the holdings of the Maine Law Court in *Mortgage Electronic Registration Systems, Inc. v. Saunders*, 2010 ME 79, 2 A.3d 289 and *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700, Caliber knew that Bank had not received an assignment of the Vincent Mortgage at the time that the Complaint was filed in this action.

99.     At the time of the filing of the Complaint by Doonan and Longoria as agents for Caliber and Bank, Caliber knew that Bank did not own the Vincent Mortgage, notwithstanding the false allegation made in Paragraph 17 of the Complaint that Bank was the owner of the Mortgage.

100.    The allegation of Paragraph 32 of the Complaint that Vincent had reaffirmed the debt relating to the Vincent Loan was false and  was known by Doonan and Longoria to be false, and therefore also Caliber and Bank also knew that that allegation was false at the time that it was made in the Complaint signed by Doonan and Longoria.

101.    At the time of the filing of the Complaint by Doonan and Longoria as agents for Caliber and Bank, Caliber knew that Bank had no standing to assert a claim for foreclosure of the Mortgage against Vincent.

102.    As alleged in Paragraphs 13 and 35 of the Complaint, Caliber sent to Vincent a purported default and notice to cure letter dated June 26, 2020 (hereafter "the Default Letter"), a copy of which is attached to the Complaint as Exhibit G.

103.    At the time that Caliber sent the Default Letter to Vincent, Bank did not own the mortgage and Bank was not the mortgagee within the meaning of 14 M.R.S. § 6111.

104.    At the time that Caliber sent the Default Letter to Vincent, Caliber knew that Bank did not own the mortgage and Bank was not the "Lender" within the meaning of Paragraph 22 of the Mortgage, and therefore knew that Bank was not the party permitted to send the default letter to Vincent.

105.    At the time of the filing of the Complaint by Doonan and Longoria on behalf of Caliber and Bank, Caliber knew that the Default letter did not meet the requirements of either 14 M.R.S. § 6111 or Paragraph 22 of the Vincent Mortgage.

106.    In causing to be filed on behalf of Bank by Doonan and Longoria the Complaint containing the false allegations against Vincent as enumerated in Count VI above and in taking the actions stated in Count IV and in the preceding paragraphs of this Count IX, Caliber violated its statutory duty imposed by 14 M.R.S. § 6113(2) to act in good faith toward Vincent

WHEREFORE, Vincent prays for an order dismissing the Complaint with prejudice and for an order for Caliber to pay to Vincent actual damages including costs and attorney fees, and for such other and further relief as this Court deems just and proper.

### Count IX:  Violation of 14 M.R.S. § 6113
### (Claim for Statutory Damages(Against Caliber)

107.    Vincent repeats the allegations of Paragraphs 1-32, Paragraphs 90-106 of  Count IX of the Counterclaim as if set forth fully in this Paragraph 107 of Count X.

108.    The Note is a negotiable instrument within the meaning of 11 M.R.S.§ 3-1104.

109.     If Vincent had not been the recipient of the 2012 Discharge Order, any rights of the holder of the Vincent Note to enforce it would have been exclusively controlled by Article III of the Maine Uniform Commercial Code and in particular 11 M.R.S. §§ 3-1301 and 3-1309.

110.     If Vincent had not been the recipient of the 2012 Discharge Order, the claim of Bank stated in Count II of the Complaint would have been the exclusive cause of action available to Bank to state a claim for any right to recovery on the Vincent Loan.

111.     The claims asserted in Count III ("Breach of Contract, Money Had and Received"), Count IV ("Quantum Meriut"), and Count V ("Unjust Enrichment") of the Complaint each included allegations that the damages sought in such count were based upon and those provided for in the Note and therefore stated no causes of action against Vincent upon which relief could be granted.

112.     There was no possible legitimate benefit which could have been derived by Bank or Caliber in including Counts III through V in the Complaint.

113.     Caliber, in initiating, managing and controlling this action through its agents, Doonan and Longoria, included the provisions of Count III through Count V in the Complaint for the purpose of increasing the burden and expense to Vincent of defending the action commenced by the Complaint.

114.     In including Counts III through V of the Complaint, Caliber, acting through its agents Doonan and Longoria failed to act in observance of reasonable commercial standards of fair dealing in violation of 14 M.R.S. § 6113.

115.     In the filing of dozens and possibly hundreds of other foreclosure actions filed by Caliber, acting through its agents Doonan and Longoria, and filed on behalf of Bank as trustee of

the trust at issue in this action and other similar trusts over the past three years, committed the same violations of 14 M.R.S. § 6113 as it committed against Vincent as alleged above.

116.    In previous similar actions Caliber and its agents Doonan and Longoria have been confronted by counsel for homeowners with assertions that the claims in Counts III through V do not state claims for which the plaintiffs can have recovery, and Caliber, through the knowledge of its agents Doonan and Longoria knows that such claims are not proper.

117.    The conduct of Caliber, acting through its agents Doonan and Longoria, in this case and in its other cases as alleged above evidences a pattern and practice of violations of the duty of good faith mandated by 14 M.R.S. § 6113, such that the court is empowered to order an award of statutory damages not exceeding $15,000 pursuant to 14 M.R.S. § 6113(4)(B).

WHEREFORE, Vincent prays for an order for Caliber to pay to Vincent statutory damages not exceeding $15,000 including costs and attorney fees, and for such other and further relief as this Court deems just and proper

## DEMAND FOR TRIAL BY JURY

In the filing of this Counterclaim Vincent demands trial by jury on all of his claims against the Counterclaim Defendants.


DATED: January 27, 2021

/s/ Thomas A. Cox
_____
Thomas A. Cox, Esq. Me. Bar No. 1248
*Attorney for Defendant Karen Lisa Vincent*

P.O. Box 1314
Portland, ME 04104
(207) 749-6671
tac@gwi.net

CERTIFICIATE OF SERVICE

I hereby further certify that on January 27, 2021, I electronically filed the foregoing Answer and Counterclaim using the CM/ECF system which will send notification of such filing to the following:

John A. Doonan, Esq., and
Reneau J. Longoria, Esq.
Doonan, Graves & Longoria, LLC

Adam J. Shub, Esq.
Preti Flaherty, LLP

 /s/Thomas A. Cox
Thomas A. Cox